**Ronald J. PIACENTINI, Plaintiff,**

v.

**Dean LEVANGIE and Charles Dance, in their individual capacities, Defendants.**

**No. CIV. A. 96–12025–WGY.**

United States District Court, D. Massachusetts.

March 26, 1998.

Ronald J. Piacentini, Concord, MA, pro se.

Brian J. Rogal, Law Offices of Timothy M. Burke, Needham, MA, for John Doe, Massachusetts Commissioner of Public Safety, Dean Levangie, Massachusetts State Police Officer, Charles Dance, Massachusetts State Police Officer, Defendants.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

Ronald J. Piacentini ("Piacentini"), an incarcerated pro se litigant, initiated this action by depositing his Complaint in the inmate mail box at the Southeastern Correctional Center, prepaid certified mail, return receipt requested on May 31, 1996. *See* Certificate of Mailing, Letter from Piacentini to Clerk of Court dated May 29, 1996. In this Complaint, Piacentini claims that the Defendants, Dean Levangie and Charles Dance (collectively "the Defendants"), violated his federal and state constitutional rights and committed common law torts when they allegedly subjected him to false arrest, malicious prosecution, deliberate suppression of exculpatory evidence, and formed a conspiracy in violation of 42 U.S.C. §§ 1983 and 1985(3). The Defendants are Massachusetts State Police Troopers and move to dismiss Piacentini's Complaint on the grounds that his section 1983 claim is barred by the statute of limitations and that his section 1985(3) claim fails

to allege the requisite animus to state a claim under this provision.

## STANDARD OF REVIEW

Under a motion to dismiss for failure to state a claim upon which relief can be granted, this Court is to accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Roy v. Augusta, Maine*, 712 F.2d 1517, 1522 (1st Cir.1983). The Court takes judicial notice of its own case files and procedures as part of this analysis since "judicial notice may be taken at any stage of the proceeding." Fed. R.Evid. 201(f). *Cf. Beddall v. State Street Bank and Trust Co.*, No. 97–1666, 1998 WL 73027, at *3–4 (1st Cir. Feb.27, 1998).

## FACTUAL BACKGROUND

Piacentini avers that on June 2, 1993 he was taken to a crime scene for a witness identification. At the crime scene, the witness identified Piacentini as the perpetrator. Following this eye-witness identification, the Defendants, who were at the crime scene, handcuffed and placed Piacentini in a state police vehicle. Then, they conducted a National Crime Information Computer check and a Missing and Wanted Persons check and determined that Piacentini was a state parolee. Piacentini avers that despite his fingerprints not being found at the crime scene and his own protestations that he could provide an alibi, the Defendants did not conduct further inquiries at the crime scene or about his alibi. Instead, upon learning that Piacentini was a state parolee, the Defendants concluded that he was the person responsible for the crime. Plt.'s Complaint ¶ 16. After his arrest, Piacentini learned that the witness had misidentified him, as he did not match prior or subsequent descriptions of the alleged perpetrator. Despite this fact, Piacentini avers that the Defen-

dants conspired to deny him a fair trial because he was a state parolee. In furtherance of this conspiracy, he alleges that the Defendants initiated the criminal prosecution knowing probable cause was lacking, failed to follow standard police investigation procedures, and failed to disclose exculpatory evidence to the prosecutors.

On June 3, 1996 Piacentini's Complaint[1], a Motion to Proceed In Forma Pauperis, and a Motion for Appointment of Counsel was received by the clerk of this Court. On October 21, 1996, upon the granting of his Motion to Proceed In Forma Pauperis, the Complaint was docketed. *See* Docket Entry No. 6. As a general rule, the date of filing is the date these documents were received by the clerk of the court. The fact that the administrative procedures of this Court do not docket and record as filed a complaint filed with a motion to proceed in forma pauperis until that motion is allowed does not alter the date the document is received for statute of limitations purposes.

## DISCUSSION

### 1. Statute of Limitations

■■■ The Defendants aver that Piacentini's section 1983 claim is time-barred. Federal law does not provide a limitations period for section 1983 claims. Courts, therefore, borrow the statute of limitation provision for personal injury actions of the state where the action is filed. *Wilson v. Garcia*, 471 U.S. 261, 276–80, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). In Massachusetts, the statute of limitation for personal injury actions is three years. Mass. Gen. Laws ch. 260, § 2A. This period commences "when the aggrieved party knows or has reason to know of the injury which is the basis for his action or when facts supportive of a civil rights action are or should be apparent to a reasonably prudent person similarly situated." *Rodriguez Narvaez v. Nazario*, 895 F.2d 38, 42 n. 5 (1st Cir.1990). Here, the parties do not dispute that the date of accrual is June 2, 1993. Therefore, to have a timely cause of action,

---

1. Piacentini filed an Amended Complaint on November 29, 1996; the transactions and occurrences which form the basis of the claims in this complaint are the same as in his Original Complaint, therefore it relates backs to the initial filing date of June 3, 1996. Fed.R.Civ.P. 15(c).

Piacentini had to file his federal claim by June 2, 1996.

■ Because this Court's subject matter jurisdiction is based upon a federal question, the statute of limitations is tolled when the action has "commenced" pursuant to Rule 3 of the Federal Rules of Civil Procedure. *See West v. Conrail,* 481 U.S. 35, 39, 107 S.Ct. 1538, 95 L.Ed.2d 32 (1987). According to Fed.R.Civ.P. 3, "a civil action is commenced by filing a complaint with the court." Rule 5(e) of the Federal Rules of Civil Procedure, which defines what constitutes filing with the court, requires that a complaint be filed with the clerk of the court. Thus, a civil action is timely if the complaint is filed with the clerk of the court within the limitations period. In this case, the Complaint was given to the prison officials on or about May 29, 1996 and received for filing by the clerk of this Court on June 3, 1996. Piacentini contends that the proper filing date is May 31, 1996.

## 2. Houston v. Lack

In *Houston v. Lack,* 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), the Supreme Court held that under the Federal Rules of Appellate Procedure 4(a)(1), a pro se prisoner's notice of appeal is filed at the moment of delivery of the notice to prison authorities for forwarding to the district court. The reasoning in *Houston* is based on understanding the unique circumstances of pro se prisoner litigants. Unlike other pro se litigants, pro se prisoner litigants are unable personally to deliver the relevant court documents to the appropriate court for processing, to utilize independently the Postal Service or private mailing services, and to monitor the delivery of such documents to the clerk of the court. *See Id.* 487 U.S. at 275. In short, the pro se prisoner litigant is unable to take the precautionary steps available to other litigants to ensure the timely arrival of notices of appeal with the clerk of the district court. *See Id.* at 271.

The lack of precautionary options coupled with the pro se prisoner's lack of control over the processing of his legal mailing by prison officials led the Supreme Court to conclude that the moment for determining when the notice of appeal is filed with the clerk of the court is when the pro se prisoner, using the official prison mailing system, gives the notice of appeal to prison authorities to mail to the district court:

> Unskilled in law, unaided by counsel, and unable to leave the prison, his control over the processing of his notice necessarily ceases as soon as he hands it over to the only public officials to whom he has access—the prison authorities—and the only information he will likely have is the date he delivered the notice to those prison authorities and the date ultimately stamped on his notice.

*Id.* at 271–72.

■ The issue presented here is whether to extend the so-called prisoner mailbox rule established in *Houston* to a pro se prisoner's filing of a section 1983 complaint. In *Houston,* the Supreme Court rejected the application of the general rule of civil appeals that a notice of appeal is not filed until received by the clerk of the district court to pro se prisoner litigants because 1) the language of the relevant procedural rules did not mandate such a rule; 2) the pro se prisoner litigant has no choice over the method for delivering the notice of appeal to the clerk of the court; and 3) where the pro se prisoner litigant uses the official prison mailing system, an adequate record of the mailing can be made thereby avoiding the uncertainty that necessitates the general rule. *Houston,* 487 U.S. at 274–76. Nothing in the language of *Houston* precludes an extension of that reasoning beyond the facts and circumstances of that case.

A majority of federal courts that have considered this question—should the rule of *Houston* be extended to a pro se prisoner's filing of section 1983 complaint—have extended the rule of *Houston. See Cooper v. Brookshire,* 70 F.3d 377 (5th Cir.1995); *Dory v. Ryan,* 999 F.2d 679 (2nd Cir.1993); *Garvey v. Vaughn,* 993 F.2d 776 (11th Cir.1993); *Hamm v. Moore,* 984 F.2d 890 (8th Cir.1992); *Lewis v. Richmond,* 947 F.2d 733 (4th Cir. 1991); *Hostler v. Groves,* 912 F.2d 1158 (9th Cir.1990), *cert. denied sub nom Groves v. Hostler,* 498 U.S. 1120, 111 S.Ct. 1074, 112 L.Ed.2d 1180 (1991); *see also Faile v. Up-*

*john Co.*, 988 F.2d 985, 987 (9th Cir.1993) (applying *Houston* to the service of discovery documents by a pro se prisoner). *But see Jackson v. Nicoletti*, 875 F.Supp. 1107, 1109–14, (E.D.Pa.1994) (refusing to extend *Houston*, despite recognizing that the holding is based on the pro se prisoner's unique circumstances and not on the particular document filed, because 1) it is contrary to the plain language of Fed.R.Civ.P. 5(e); 2) it would be administratively burdensome to implement; 3) the longer period of time to file a complaint compared to a notice of appeal diminishes the force of the access argument; 4) it is counter to the finality and repose purposes of statutes of limitation; 5) it exempts pro se prisoners from the deadlines imposed by the Federal Rules of Civil Procedure, and 6) the current composition of the Supreme Court suggests that *Houston* would not be similarly decided today). The First Circuit has not spoken directly on this point. *Cf. Reid v. New Hampshire*, 56 F.3d 332, 340 n. 16 (1995) (holding that an opposition to a motion for summary judgment is reasonably filed by a pro se prisoner when given to a prison warden on the date due).

The rationale of those cases extending the *Houston* doctrine is three-fold. *See Lewis v. Richmond City Police Dep't*, 947 F.2d at 735–36. First, the reasoning of *Houston* is applicable to pro se prisoners whose only option is using the official prison mailing system for sending pleadings to the clerk of the court. Second, the similar statutory language of Fed.R.Civ.P. 5(e) and Fed. R.App. P. 3(a) and 4(a)(1) counsel application of the rule to civil pleadings generally.[2] Like Fed. R.App. P. 3(a) and 4(a)(1), Fed.R.Civ.P. 3 and 5(e) do not "set forth criteria for determining the moment at which the 'filing' has occurred." *Houston*, 487 U.S. at 273 (cita-

tion omitted). Third, the language of *Houston* does not appear to limit the holding to the facts and circumstances of that case. In concluding that *Houston* applies to the filing of pleadings other than notices of appeal under Fed. R.App. P. 4(a)(1), the circuit courts have recognized that the pro se prisoner litigant's lack of control over the timely arrival of the complaint to the clerk of the district court is a central element of the ratio decidendi of *Houston*. "The Houston rule merely serves to create functionally equivalent time bars and provide equal access to the courts for pro se prisoner litigants." *Lewis*, 947 F.2d at 736. The Court concurs with this reasoning. The Court identifies no compelling reason to determine the moment of filing a complaint differently than the moment of filing for a civil appeal.

■ This Court holds that where a pro se prisoner lacks control over the timely receipt of the complaint by the clerk of the district court, and uses the official prison mailing system to deliver section 1983 complaint to the clerk of the court, the complaint is filed when it is delivered to prison authorities. Here, Piacentini offers a xerox copy of the receipt for certified mail stamped May 31, 1996 and the signed return receipt dated June 3, 1996 as proof that he filed his complaint with the prison authorities on May 31, 1996. *See* Opp'n Defs. Mot. Dismissal Statute of Limitations. Based on this evidence, this Court concludes that this complaint was timely filed, as filing was made within the three-year limitations period.

### 3. Failure to State a Claim as to 42 U.S.C. § 1985 Claims

■ The Defendants assert that Piacentini's claims under 42 U.S.C. § 1985(3) should

---

**2.** The Federal Rules of Appellate Procedure 3(a) and 4(a)(1) state, in pertinent part:

> An appeal permitted by law as of right from a district court to a court of appeals *must be taken by filing a notice of appeal with the clerk of the district court* within the time allowed by Rule 4.

> . . . . .

> [I]n a civil case in which an appeal is permitted by law as of right from a district court to a court of appeals the notice of appeal required by Rule 3 *must be filed with the clerk of the*

*district court* within 30 days after the date of entry of the judgment or order appealed from. (emphasis added).

The Federal Rules of Civil Procedure 3 and 5(e) state, in pertinent part:

> A civil action is *commenced by filing a complaint with the court.*

> . . . . .

> The filing of papers with the court as required these rules shall be *made by filing them with the clerk of court* . . . . (emphasis added).

be dismissed, because he has failed to establish the requisite animus required to support a claim of conspiracy. Under section 1985(3), a person may bring a private conspiracy claim under either the deprivation clause or the hindrance clause of this provision.[3] Piacentini's claim appears to arise under the hindrance clause, which applies to conspiracies aimed at obstructing law enforcement efforts. In *Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 278–82, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993), the Supreme Court opined, in dictum, that the requirement of "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action," *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), under the deprivation clause applies to claims under the hindrance clause. Since *Bray,* the First Circuit has held that "a plaintiff under the hindrance clause of § 1985(3) must show that the alleged conspiracy was motivated by some class-based, invidiously discriminatory animus." *Libertad v. Welch,* 53 F.3d 428, 448 (1st Cir.1995). Piacentini avers that the actions Defendants arrested him solely because of his status as a parolee, and that this type of animus satisfied the invidiously discriminatory animus requirement of the hindrance clause. This Court disagrees.

■ Section 1985(3) has not been broadly interpreted to reach any class-based animus. *See e.g. Bray,* 506 U.S. at 268–74 (animus against women seeking abortions is inapplicable); *United Bhd. of Carpenters and Joiners of America v. Scott,* 463 U.S. 825, 834–38, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983)(economic and commercial animus is inapplicable). To assess whether a person or identifiable group is a protected class falling within the scope of section 1985(3)'s protections, the First Circuit considers whether the person or the identifiable group would be subject to heightened scrutiny under the Equal Protection Clause. *See Libertad,* 53 F.3d at 448 (con-cluding that animus against women meets the class-based, invidiously discriminatory animus required by the hindrance clause because gender is a quasi-suspect classification under the Equal Protection Clause). Parol status is not a suspect or quasi-suspect classification under the Equal Protection Clause. Therefore, any animus the Defendants may have had towards Piacentini as a parolee is insufficient to satisfy the animus requirement of section 1985(3).

## CONCLUSION

The Defendants' Motion to Dismiss is **DENIED** in part and **GRANTED** in part. Piacentini's section 1983 claim is not time-barred, as his complaint was timely filed. Piacentini's section 1985(3) claim is dismissed for failure to state a claim upon which relief can be granted, because the requisite animus required by 42 U.S.C. § 1985 cannot be established. The case is set for trial on the October, 1998 running trial list.

SO ORDERED.

---

3. Section 1985(3) reads, in pertinent part:

If two or more persons ... conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws ... the party so injured or deprived may have an action for the recovery of damages ... against any one or more of the conspirators.